UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JEAN KARLO CONQUISTADOR, | : | |
| Plaintiff, | : | No. 3:19-cv-1450 (KAD) |
| | : | |
| v. | : | |
| | : | |
| FAHD SYED, et al., | : | |
| Defendants. | : | |

**INITIAL REVIEW ORDER**

**Preliminary Statement**

*Pro se* Plaintiff, Jean Karlo Conquistador ("Conquistador"), currently confined at Bridgeport Correctional Center in Bridgeport, Connecticut, brings this civil rights complaint pursuant to 42 U.S.C. § 1983. He asserts claims of deliberate indifference, retaliation, use of excessive force, and unlawful seizure of property in violation of his rights under the First, Fourth, Eight, and Fourteenth Amendments against six defendants, all employees of the Department of Correction: Captain Fahd Syed, and Officers Bakewell, Blekis, Kennedy, Colombo, and Allegne.  Conquistador seeks damages against the defendants in their individual and official capacities.  The complaint was received on September 19, 2019, and Conquistador's motion to proceed *in forma pauperis* was granted on October 3, 2019.

**Standard of Review**

Under section 1915A of title 28 of the United States Code, the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a

defendant who is immune from such relief. *Id.* In reviewing a *pro se* complaint, the Court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

**Allegations**

On August 26, 2019, Disciplinary Investigator Snowden told Conquistador that he would be returning to the IPM2 Unit for continuation in the Chronic Discipline Program because he could not be held for more than two weeks pending investigation of a disciplinary report for alleged threats. Doc. No. 1, ¶ 1. He was escorted to IPM2, cell 606 at 11:40 a.m. *Id.* ¶ 2.

Conquistador complained that the cell had feces on the walls, floor, and toilet and smelled of urine; that the toilet did not work, and that there was no table or chair for him to study or do paperwork. *Id.* ¶ 3. He was ignored for several hours. *Id.* ¶ 4.

Several hours later, Officer Falcone and defendant Alleyne delivered Conquistador's bedroll and box of legal files. *Id.* ¶ 5. He was handcuffed and directed to step out of the cell so his belongings could be placed in the cell. *Id.* ¶ 6. Conquistador objected to having his belongings placed in the cell and refused to re-enter the cell. *Id.* ¶ 7. He lay face-down on the

2

floor and refused to walk back into the cell.  *Id.* ¶ 8.

A few moments later, defendants Syed, Bakewell, Blekis, Kennedy and other officers arrived at the cell.  *Id.* ¶ 9.  Defendant Syed asked Conquistador, who was still on the floor, what the problem was.  *Id.* ¶ 10.  Conquistador described his objections to the cell condition.  *Id.*  Defendant Syed disregarded his concerns and ordered Conquistador to "get up and walk."  *Id.* ¶ 11.  When Conquistador objected, defendant Syed said that "that was going to be his cell."  *Id.* ¶¶ 12-13.

Conquistador continued to refuse to get up and enter the cell.  *Id.* ¶ 14.  He was picked up and carried into the cell.  *Id.* ¶ 15.  He was not being physically hostile or trying to attack any officer and did not make any sudden movements.  *Id.*  Inside the cell, defendant Alleyne twisted his left foot causing pain.  *Id.* ¶ 16.  Defendants Blekis and Kennedy twisted his wrists.  *Id.*  Defendant Bakewell sprayed him in the face with a chemical agent after defendant Syed ordered that the handheld camera not be turned on and that Conquistador's head be held up.  *Id.*  ¶ 16, 18.  Defendant Kennedy grabbed Conquistador's neck to hold up his head.  *Id.* ¶ 17.

About a week prior to this incident, defendants Syed and Alleyne received copies of a complaint Conquistador had filed against them.  *Id.* ¶ 20.

On August 30, 2019. Defendants Bekis and Columbo transported Conquistador to Bridgeport Correctional Center ("Bridgeport") after Conquistador was arraigned on charges that he had threatened Correctional Officer Rehm, a defendant in another lawsuit filed by Conquistador.  *Id.* ¶ 21.  When Conquistador asked them to get his property from the van, defendant Blekis said he was not getting anything.  *Id.* ¶ 22.  They brought his property back to Garner Correctional Institution.  *Id.* ¶ 23.  His television and white leather Reeboks are missing.

3

*Id.* ¶¶ 24-25.

**Discussion**

Conquistador identifies his claims as retaliation, deliberate indifference, excessive force, and unlawful seizure of his property in violation of his rights under the First, Fourth, Eighth, and Fourteenth Amendments. He seeks damages from the defendants in their individual and official capacities.

The events described in the complaint purportedly giving rise to Conquistador's claims occurred between August 26, 2019 and August 30, 2019. The compliant is dated fourteen days later -September 13, 2019. Accordingly, it is manifest that Conquistador did not exhaust any administrative remedies prior to filing this complaint and the complaint is subject to dismissal as a result.

Inmates, both sentenced prisoners and pretrial detainees, are required to exhaust administrative remedies before filing a federal lawsuit related to prison conditions. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. The exhaustion requirement applies to all claims regarding "prison life, whether they involve general circumstances or particular episodes." *Porter v. Nussle,* 534 U.S. 516, 524, 532 (2002). Exhaustion of available administrative remedies must occur regardless of whether the administrative procedures provide the relief that the inmate seeks. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). Furthermore, prisoners must comply with all procedural rules regarding the grievance process prior to commencing an action in federal court. *See Woodford v. Ngo*, 548

U.S. 81, 90-91, 93 (2006) (proper exhaustion "means using all steps that the agency holds out . . . (so that the agency addresses the issues on the merits) . . . [and] demands compliance with agency deadlines and other critical procedural rules"). Thus, completion of the exhaustion process after a federal action has been filed does not satisfy the exhaustion requirement. *See Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001). Special circumstances do not relieve an inmate of his or her obligation to adhere to the exhaustion requirement. An inmate's failure to exhaust administrative remedies is only excusable if the remedies are in fact unavailable. *See Ross v. Blake*, ___ U.S. ___, 136 S. Ct. 1850, 1858 (2016).

Generally, failure to exhaust administrative remedies is raised as an affirmative defense. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). A court may, however, dismiss a complaint for failure to state a claim where the allegations on the face of the complaint establish that the exhaustion requirement has not been met. *See Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) ("district court still may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement") (citing *Jones*, 549 U.S. at 215).

The administrative remedies for the State of Connecticut Department of Correction are set forth in Administrative Directive 9.6. *See* Administrative Directive 9.6, Inmate Administrative Remedies (revised August 15, 2013), available at http://portal.ct.gov/-/media/DOC/Pdf/Ad/ad0906pdf.pdf. The type of remedy available to an inmate depends on the nature of the issue or condition experienced by the inmate or the decision made by correctional personnel. For all matters relating to any aspect of a prisoner's confinement that are subject to the Commissioner's authority and that are not specifically identified in subsections (B) through

5

(I) of Administrative Directive 9.6(4), the applicable remedy is the Inmate Grievance Procedure set forth in 9.6(6). Thus, claims such as those raised herein, i.e. the use of excessive force or inmate safety, are subject to the Inmate Grievance Procedure set forth in Administrative Directive 9.6(6).

Under this Inmate Grievance Procedure, an inmate must first attempt to resolve the matter informally. He or she may attempt to verbally resolve the issue with an appropriate staff member or supervisor. *See id.* at 9.6(6)(A). If these attempts are not effective, the inmate must submit a written request on a specific form and send that form to the appropriate staff member. *See id.* If an inmate does not receive a response to the written request within fifteen business days or the inmate is not satisfied with the response to his request, an inmate may file a Level 1 grievance. *See id.* at 9.6(6)(C). Thus, the very first step in the Inmate Grievance Procedure takes, *at least* 15 days, and that calculation assumes that the informal verbal attempt at resolution and the submission of a written request thereafter all occur on the same day.

The Level 1 grievance must be filed thereafter within thirty calendar days from the date of the occurrence or discovery of the cause of the grievance and should include a copy of the response to the written request to resolve the matter informally or explain why the response is not attached. *See id.* The Unit Administrator shall respond in writing to the Level 1 grievance within thirty business days of his or her receipt of the grievance. *See id.* at 9.6(6)(I). Accordingly, the next step in the Inmate Grievance Procedure, can take up to 60 days from the date of the events giving rise to the grievance.[1]

---

[1] Though not necessary to the Court's conclusion, it is worth nothing that the full Inmate Grievance Procedure can take even longer. An inmate may appeal the disposition of the Level 1 grievance by the Unit Administrator or the

Here, whether Conquistador attempted to resolve his grievance informally is unknown as the Complaint makes no reference to any effort to exhaust administrative remedies. However, Conquistador filed the instant complaint **14 days** after the events which purportedly give rise to his claims. As such, the time within which a staff member must respond to an initial written request had not expired. And it flows from this that the time to submit a Level 1 grievance following receipt of the response to the written request had not expired and the DOC opportunity to respond to such a grievance had not expired. The conclusion that Conquistador did not exhaust his administrative remedies is inescapable on the face of the Complaint. Thus, the Complaint is subject to dismissal on that ground. Before dismissing the complaint, however, the Court will afford Conquistador an opportunity to address the issue.

## CONCLUSION

On or before December 26, 2019, Conquistador must file a response to this order addressing why the complaint should not be dismissed due to his failure to fully exhaust administrative remedies before commencing this action. If Conquistador does not provide a valid legal basis for his failure to exhaust, or if he fails to comply with this order, the Complaint shall be dismissed on December 27, 2019 without further notice from the Court. The response shall be filed using the Prisoner Efiling Program.

---

Unit Administrator's failure to dispose of the grievance in a timely manner to Level 2. *See id.* at 9.6(6)(G), (I) & (K). The Level 2 appeal of a disposition of a Level 1 grievance must be filed within five calendar days from the inmate's receipt of the decision on the Level 1 grievance. *See id.* at 9.6(K). The Level 2 appeal of the Unit Administrator's failure to dispose of the Level 1 grievance in a timely manner must be filed within 65 days from the date the Level 1 grievance was filed by the inmate. *See id.* at 9.6(M). Level 2 appeals are reviewed by the appropriate District Administrator. *See id.* at 9.6(6)(K). The District Administrator is required to respond to the Level 2 appeal within thirty business days of receipt of the appeal. *See id.*

**SO ORDERED** at Bridgeport, Connecticut, this 4th day of December 2019.

/s/
Kari A. Dooley
United States District Judge